## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF NEW YORK

| | |
|---|---|
| Patrick Tanasi, on behalf of himself and all others similarly situated, | |
| Plaintiff, | CIVIL ACTION |
| vs. | NUMBER: _____ |
| NewAlliance Bank and First Niagara Financial Group, Inc., | |
| Defendants. | |

## CLASS ACTION COMPLAINT

Patrick Tanasi, by and through his attorneys, on behalf of himself and all others similarly situated, alleges the following based on information and belief:

## I.    INTRODUCTION

1.    This is a civil action seeking monetary damages, restitution, and declaratory relief from Defendant NewAlliance Bank ("NewAlliance" or "Defendant"), arising from New Alliance's unfair, unconscionable, and illegal assessment and collection of excessive overdraft fees.

2.    NewAlliance and certain other banks have taken advantage of the popularity of electronic banking and the ubiquitous use of debit card transactions to turn the assessment of overdraft fees into a major profit center. A debit card allows customers to access their checking account funds by using the card to execute a transaction. When a debit card is used, the charge is processed electronically and banks such as NewAlliance have the option to accept or decline the

transaction at the point of sale. Historically, banks covered customers who occasionally bounced checks and even did so for a time for customers using debit cards, without charging their customers. Since the early 1990s, however, NewAlliance and certain other banks have devised methods to provide overdraft "protection" for customers and charge them exorbitant fees in each instance. An FDIC report estimated that overdraft fees represent 74 percent of the total service charges that are imposed on deposit accounts in the United States, and that overdraft fees for debit cards can carry an effective annualized interest rate that *exceeds 3,500 percent*.

3.    In 2007, banks collected more than $17 billion in overdraft fees. That number nearly doubled in 2008, as more and more consumers struggled to maintain positive checking account balances. In 2009, banks brought in $37.1 billion in overdraft charges alone. With more than 88 banking offices and 100 automatic teller machines ("ATMs") during the Class Period, NewAlliance was a large recipient of these improper charges.

4.    These fees disproportionately affect the poor, who are most likely to maintain low balances. It has been estimated that 90 percent of overdraft fees are paid by the poorest 10 percent of banks' customer base. Moreover, these fees often create a domino effect because imposing a service charge on an account with a negative balance will make it less likely that the account holder's balance will reach positive territory, resulting in more fees.

5.    Before debit cards existed, banks occasionally extended the courtesy of honoring paper checks written on overdrawn or otherwise deficient accounts for customers who were typically in good standing. Banks extended this courtesy largely because the third party involved in a sales transaction allowed the customer to pay by check, expecting the funds to be available and the check to clear. For example, if a customer wrote a check to purchase groceries, the

2

grocery store would only know whether the check cleared some time *after* the groceries had been purchased.

6.     The same considerations are not present when customers use debit cards. Banks could simply decline to honor debit or point of sale transactions where accounts lack sufficient funds to execute the transactions. Retail and service transactions could still be executed if consumers presented an alternative form of payment. ATM transactions could still proceed if banks provided a warning that an overdraft fee would be assessed, and customers chose to proceed nevertheless. In fact, until a few years ago, banks simply declined debit transactions that would overdraw an account.

7.     Instead of simply declining debit transactions when customers have insufficient funds in their account, or warning its customers that an overdraft fee will be assessed if they proceed with the transaction, NewAlliance routinely processed such transactions and then charged its customers an overdraft fee of $33.00 – even when the transaction was for only a few dollars. This automatic, fee-based overdraft scheme was unrelated to any business cost incurred by NewAlliance, and instead was intentionally designed and implemented to maximize overdraft fee revenues for NewAlliance.

8.     In many instances, these overdraft fees cost NewAlliance account holders hundreds of dollars in a matter of days, or even hours, when they may be overdrawn by only a few dollars. In fact, customer accounts may not actually be overdrawn at the time overdraft fees were charged by NewAlliance.

9.     It was through manipulation and alteration of customers' transaction records that NewAlliance maximized overdraft penalties imposed on customers.

10.     On behalf of himself and all others similarly situated, Plaintiff brings this action

against NewAlliance (and against Defendant First Niagara Financial Group, Inc. ("First

Niagara") as the successor-in-interest to New Alliance) based on NewAlliance's deceptive

practice of assessing overdraft charges to Plaintiff and the Class.  Plaintiff seeks actual damages,

restitution of all overdraft fees paid to NewAlliance by Plaintiff and the Class as a result of the

wrongs alleged herein, disgorgement of the ill-gotten gains derived from New Alliance's

misconduct,  pre- and post-judgment interest, as well as attorney's fees and expenses.

## II.    PARTIES

11.     Plaintiff Patrick Tanasi is a Connecticut resident who maintained a personal

checking account with NewAlliance during the Class Period until NewAlliance became a

wholly-owned subsidiary of First Niagara.  Plaintiff Tanasi banked primarily at NewAlliance's

branch located at 344 Middle Turnpike, West Manchester, Connecticut.

12.     During the Class Period, Defendant NewAlliance Bank, formerly New Haven

Savings Bank, was a subsidiary of NewAlliance Bancshares, Inc. ("NewAlliance Bancshares"), a

Delaware business corporation with its principal offices at 195 Church Street, New Haven,

Connecticut.  At all relevant times, NewAlliance Bank provided retail banking services to tens of

thousands of consumers through 88 branches in Connecticut and western Massachusetts, which

included issuing debit cards for use by its customers – including Plaintiff and members of the

Class – in conjunction with their checking accounts.

13.     On August 18, 2010, NewAlliance's parent at the time, NewAlliance Bancshares,

entered an agreement and plan of merger with Defendant First Niagara pursuant to which

NewAlliance Bancshares would merge into First Niagara.  On April 15, 2011 NewAlliance

Bancshares became a wholly-owned subsidiary of Defendant First Niagara. As a result of the

merger, NewAlliance's 88 locations in Connecticut and western Massachusetts began operating

under the First Niagara banner. John R. Koelmel, the President and CEO of First Niagara, said

at the time that "The transaction [would] be completed by the close of the business day Friday,

April 15 [2011]. Come Monday, April 18, all those locations are going to reopen as First

Niagara branches." (April 6, 2011 Manfield-StorrsPatch, "NewAlliance, First Niagara Merger

Approved", available at http://mansfield.patch.com/articles/newalliance-first-niagara-merger-

approved).

14.     As a result of the merger, Defendant First Niagara is the successor-in-interest to

NewAlliance, its business and its obligations and liabilities. Plaintiff only sues Defendant First

Niagara in this Complaint as the successor and parent to NewAlliance and does not allege

independent overdraft violations by First Niagara.

15.     Defendant First Niagara is a Delaware corporation with its principal executive

offices at 726 Exchange Street, Suite 618, Buffalo, New York. First Niagara is a publicly-traded

bank holding company.

## III.    JURISDICTION AND VENUE

16.     This Court has personal jurisdiction over each Defendant. Defendant First

Niagara is registered to do business, and does substantial business, in New York. It is registered

with the New York Secretary of State's Division of Corporations. Its registered agent for service

of process is John R. Koelmel, 6950 South Transit Road, Lockport, New York. Defendant

NewAlliance, as a subsidiary of First Niagara, is similarly subject to jurisdiction in this District

and has the same agent for service of process.

17.     This Court has jurisdiction over this action pursuant to the Class Action Fairness Act, codified at 28 U.S.C. § 1332(d), because there is the requisite diversity of citizenship between Plaintiff and members of the purported class and the Defendants. The aggregate amount in controversy exceeds $5 million. *See* 28 U.S.C. § 1332(d)(2).

18.     Venue is proper in this District under 28 U.S.C. § 1391(b) because (i) Defendant First Niagara resides in this District; (ii) Defendant NewAlliance, as a subsidiary of First Niagara, resides in this District; and (iii) Defendant First Niagara maintains control of the original New Alliance accounts (that are the subject of the action) in this District.

## IV.     FACTUAL ALLEGATIONS

### A.     NewAlliance

19.     During the Class Period, NewAlliance provided its customers with a variety of banking services. One of the services provided by NewAlliance for customers who open a checking account is a debit card, also known as a check card or ATM card. Through those debit cards, customers can engage in transactions using funds directly from their accounts by engaging in "debit" or "point of sale" ("POS") transactions, or may withdraw money from their accounts at ATMs. Whether the card is used to execute POS transactions or to withdraw cash from ATMs, the transaction is processed electronically. As a result, NewAlliance was notified instantaneously when the card was swiped and had the option to accept or decline transactions at such time.

20.     NewAlliance employed sophisticated software to automate and operate its overdraft system. This system was designed to, and did in fact, maximize the number of overdrafts and the amount of overdraft fees charged to customers.

21.     As a result of NewAlliance's manipulation and alteration of customers' transactions records, funds in a customer's account were depleted more rapidly and more overdraft fees were charged for multiple smaller transactions. Indeed, overdraft charges were likely to occur at times when, but for the manipulation and alteration, there would be funds in the account and no overdraft would occur.  For example, if a customer, whose account had a $50 balance, made five transactions – four $10 transactions and a subsequent $100 transaction – NewAlliance would reorder the debits from largest to smallest, posting the larger $100 transaction first.  This reordering resulted in a total of five overdraft transactions and five corresponding fees assessed to the account holder. Conversely, if the $100 transaction were processed in the order that it was made – last – only one overdraft fee should be assessed.

**B.      NewAlliance's Relevant Customer Documents Concerning        Overdrafts**

22.     Plaintiff and all members of the Class maintained a checking account with NewAlliance.  The account holder agreements governing NewAlliance's checking accounts were adhesion agreements that were presented to NewAlliance customers on a "take it or leave it" basis, drafted and imposed by NewAlliance, which was the party of vastly superior bargaining strength.

23.     The account holder agreement at NewAlliance, called the "Terms and Conditions", failed to indicate that NewAlliance would always reorder debits from highest to lowest or that NewAlliance would charge overdraft fees in bad faith and for the sole purpose of increasing its profits.

**C.      NewAlliance's Re-Ordering of Checking Account Transactions**

24.     In an effort to maximize overdraft revenue, NewAlliance manipulated and

7

reordered debits from highest to lowest during the Class Period and imposed overdraft on

customers in bad faith and in an effort to increase its revenues. NewAlliance reordered

transactions to increase the number of exorbitant overdraft fees it could charge. This practice

was improper and was done in bad faith and violated consumer protection laws and the covenant

of good faith and fair dealing implicit in NewAlliance's customer agreement.

25.     In addition, NewAlliance misrepresented its practices as NewAlliance did not

state clearly in writing that it would *always* reorder debits from highest to lowest or manipulate

transactions to enable NewAlliance to impose overdraft fees.

Thus, NewAlliance's practices were deceptive and unfair because it was, in fact, NewAlliance's

policy to *always* reorder debits from highest to lowest.

26.     Even if Plaintiff had been given materials containing clear and unambiguous

language disclosing or authorizing NewAlliance's practices as described above, any such notice

or authorization would have been inadequate and ineffective. Furthermore, any reservation of

discretion to reorder transactions and assess overdraft fees would be constrained by

NewAlliance's legal obligation to deal fairly and in good faith, which obligation NewAlliance

disregarded.

27.     Transactions involving debit cards used by NewAlliance customers, including the

withdrawal of cash from ATMs and POS transactions with vendors, were processed

electronically. As a result, NewAlliance was notified instantaneously when the customer's debit

card was swiped, and had the option to notify the customer that the transaction would result in an

overdraft fee or decline these transactions. Rather than warn the customer or decline the

transaction, NewAlliance would complete the transaction and assess the customer's account an

overdraft fee of $33.00.

28.     Additionally, and notwithstanding the instantaneous nature of these electronic

debit card transactions, under NewAlliance's posting system, it failed to post charges in the order

in which they are assessed or received. NewAlliance developed a policy and employed a practice

whereby account charges and debits were posted to its customers' accounts out of chronological

order to maximize the number of overdraft transactions and, therefore, the amount of overdraft

fees charged to its customers.

29.     NewAlliance refrained from immediately posting charges and credits to a

customer's account as it received them. By holding charges and postponing credits,

NewAlliance was able to amass a number of fees on the account that the customer would not

otherwise incur. When the charges were eventually posted to the customer's account,

NewAlliance posted them in order of largest to smallest – not in the order in which they were

received or in the order in which they were charged. Similarly, credits were posted after the

day's charges, regardless of when deposits were made. The delayed posting not only prevented

customers from ascertaining the accurate balances in their accounts, but frequently resulted in the

imposition of multiple overdraft fees that would not have been imposed had each transaction

posted in the order that it was made.

30.     NewAlliance's policy and practice of posting charges from largest to smallest,

rather than chronologically, was designed intentionally to maximize the generation of overdraft

fees by triggering overdraft fees for account charges that would not otherwise result in such fees,

and its policy and practice were divorced from a legitimate business or cost basis.

31.     NewAlliance's processing practices substantially increased the likelihood that

customers' smaller charges would result in multiple overdraft fees. The practices provided

NewAlliance with substantially higher service fee revenues than it would otherwise achieve

absent these practices.

32.     In addition, NewAlliance customer account statements were deceptive, unfair and

misleading because NewAlliance persisted in charging overdraft fees even when no transactions

were being made against a negative balance. In other words, NewAlliance assessed overdraft

fees independent of any account activity.

   **D.**  **NewAlliance's Obstruction of Accurate Balance Information**

33.     NewAlliance actively promoted the convenience of its debit cards and other

electronic debiting, but failed to provide customers with accurate balance information. When

customers executed account transactions, they generally did not have access to an accurate

balance register or balance information.

34.     NewAlliance provided inaccurate balance information to its customers through its

electronic network.  In certain cases, NewAlliance informed its customers that they had a

positive balance when, in reality, they had a negative balance, despite NewAlliance's actual

knowledge of outstanding debits and transactions.

35.     Even when NewAlliance had actual knowledge of outstanding transactions which

has already created a negative balance in a customer's account, it encouraged the customer to

incur more overdraft charges by approving – rather than prudently declining – subsequent debit

card purchases and other electronic transactions.

E.   **NewAlliance's Failure to Notify Customers of Overdrafts or Block Transactions That Would Result in an Overdraft**

36.   When its debit cards were used in POS transactions or at ATMs, NewAlliance was able to determine, almost instantaneously, whether there were sufficient funds in a customer's account to cover that particular transaction. NewAlliance had the technological capability to decline transactions or notify customers at that very moment that the particular debit card transaction would result in an overdraft. NewAlliance could give customers the option to decline the transaction to avoid incurring the overdraft fee, but it did not do so because it sought to maximize the amount of revenue generated through its assessment of overdraft fees, independent of the business cost actually associated with such overdrafts.

37.   Notwithstanding its technological capabilities and actual knowledge, NewAlliance failed to provide notice to Plaintiff and the Class that a particular debit card transaction would result in an overdraft and, hence, an overdraft fee. Because NewAlliance customers were not notified of the potential overdraft, and were not given the option of declining the debit card transaction or providing another form of payment, the customers were assessed monetary damages in the form of overdraft fees.

F.   **NewAlliance's Overdraft Policies and Practices Were Contrary to Best Practices**

38.   By engaging in the conduct described herein, NewAlliance failed to follow the list of "best practices" for overdraft programs set forth in "Overdraft Protection: A Guide for Bankers," issued by the American Bankers Association, including offering customers the option of "opting out" of any overdraft programs, and informing customers, before they access funds, that a particular point of sale or ATM transaction would cause them to incur an overdraft fee.

**G.    NewAlliance's Unfair, Egregious, and Illegal Policies and Practices**

39.    NewAlliance's overdraft policies and practices were unfair, egregious, and illegal in the following respects, among others:

    a.    NewAlliance did not obtain affirmative consent from checking account customers prior to enrolling the customer in the bank's overdraft program;

    b.    NewAlliance did not obtain affirmative consent from checking account customers prior to processing a transaction that would overdraw the account and result in an overdraft fee;

    c.    NewAlliance took advantage of its customers by failing to alert them that a debit card transaction would trigger an overdraft, and did not provide the customer with the opportunity to cancel that transaction, before assessing an overdraft fee;

    d.    The amount of overdraft fees was disclosed in a grossly unfair manner because the bank did not disclose that NewAlliance would charge overdraft fees when a customer did not have a negative balance at the point of sale;

    e.    The bank's account agreement during the Class Period was grossly unfair in that it did not unambiguously state that NewAlliance would enroll customers in the overdraft program and would always reorder debits from high to low, even though NewAlliance *always* reordered transactions in this way for customers in order to maximize overdrafts and overdraft fee revenues for the bank.

40.    NewAlliance's wrongful overdraft policies and practices described above harmed Plaintiff and members of the Class.

**H.**    **NewAlliance's Data Manipulation and Overdraft Practices Harmed Plaintiff and the Class**

41.    As a consequence of NewAlliance's overdraft policies and practices, Plaintiff and the Class have been wrongfully charged overdraft fees. NewAlliance has improperly deprived Plaintiff and the Class of significant funds, causing ascertainable monetary losses and damages.

42.    As a consequence of NewAlliance's improper practices, NewAlliance wrongfully deprived Plaintiff and the Class of funds to which NewAlliance had no legitimate right.

43.    Plaintiff and members of the Class either had adequate funds to cover the transactions posted to their accounts, or the accounts were allowed to become overdrawn, even by *de minimis* margins, exclusively in order to cause NewAlliance to impose these wrongful charges. In many instances, NewAlliance manipulated the process for imposing overdraft fees and triggered a cascade of charges that greatly multiplied the charges it collected from Plaintiff and Class members.

**V.    CLASS ALLEGATIONS**

44.    Plaintiff brings this class action on behalf of himself and all others similarly situated pursuant to Rule 23 of the Federal Rules of Civil Procedure ("Rule 23").

**A.    The Class[1]**

45.    Plaintiff seeks to represent the following Class of similarly situated persons defined as follows:

> All NewAlliance customers who at any time within the applicable statute of limitations preceding the filing of this action through April 15, 2011: (i) maintained an account at NewAlliance; (ii) initiated an electronic funds transfer with an ATM or debit card issued by Defendant; and (iii) were

---

[1]  Except where specified differently, "Class" refers to the proposed class definition alleged herein.

actually assessed one or more overdraft fees or charges for an ATM or one-time debit card transaction as a result of NewAlliance's practices alleged herein.

46.     Plaintiff reserves the right to modify or amend the definition of the proposed Class before the Court determines whether certification is appropriate, and thereafter if reasonably necessary and appropriate.

**B.     Numerosity**

47.     Upon information and belief, there are at minimum hundreds – and more likely, thousands – of Class members.  As a result, joinder of all members of the Class before the Court impractical.

48.     The Court may ascertain the exact size of the Class and the identities of the individual members thereof through Defendants' records, which are in exclusive control of Defendants.

49.     Notice of the pendency of this action to Class members may be accomplished by techniques and forms commonly used in class actions, such as published notice, e-mail notice, website notices, first class mail, or combinations thereof, or by other methods suitable to this class and deemed necessary or appropriate by this Court.

50.     Because of the large number of members of the Class, joinder of all members would be extremely difficult and inconvenient.

51.     This case centers on NewAlliance's practice of charging a fee of $33 throughout the Class Period for payment of ATM or one-time debit card transactions.  Because of the small amount of the individual charges, Class members who have been improperly assessed this fee are not likely to be able to prosecute individual lawsuits that would cost much more in attorney fees

14

to bring the suit than the actual claim for recovery.

52.     In the interest judicial economy, the Court should determine Defendants' liability for all Class members in a single action rather than having hundreds of cases for the same cause of action based on the same facts pending in multiple districts across the state.

### C.     Typicality

53.     Plaintiff's claims are typical of the claims of all members of the Class.

54.     Plaintiff possesses the same interest as every other Class member and has suffered the same injury as all Class members.

55.     Plaintiff's claims and the claims of each Class member are based on the same legal theories and arise from the same unlawful conduct.

56.     Plaintiff and each Class member were customers of NewAlliance and were assessed fees or charges for NewAlliance's overdraft services stemming from purchases made with ATM or debit cards.

### D.     Common Questions of Law and Fact

57.     This case presents many common questions of law and fact.

58.     Common questions of law and fact to Plaintiff and the Class predominate over any questions which may affect individual members.

59.     Common questions of law and fact concerning Defendant's inappropriate unconscionable conduct include:

      a.  Whether NewAlliance failed to adequately disclose to its customers that they were being enrolled in an overdraft program and would incur fees;

      b.  Whether NewAlliance failed to adequately disclose to its customers that they

could elect to opt out of overdraft protection;

c. Whether NewAlliance failed to obtain affirmative consent from checking account customers prior to processing a transaction that will overdraw the account and result in an overdraft fee;

d. Whether NewAlliance wrongfully took advantage of its customers by failing to alert them that a debit card transaction would trigger an overdraft, and did not provide the customer the opportunity to cancel that transaction, before assessing an overdraft fee;

e. Whether NewAlliance failed to indicate that it would *always* reorder debits highest to lowest in order to maximize overdrafts and overdraft fee revenues for NewAlliance;

f. Whether the amount of overdraft fees was disclosed in a grossly unfair manner and legally inadequate manner because NewAlliance did not disclose that it would charge overdraft fees when a customer had not made any transactions against an insufficient balance;

g. Whether NewAlliance failed to disclose that it charged a fee of $33 for overdrafts on a customer's account;

h. Whether NewAlliance provided inaccurate balance information to its customers through its electronic network or informed its customers that they had a positive balance when, in reality, they had a negative balance, despite NewAlliance's actual knowledge of outstanding debits and transactions;

i. Whether NewAlliance failed to provide notice to Plaintiff and the Class that a

16

particular debit card transaction would result in an overdraft and, hence, an overdraft fee; and

j. Whether Plaintiff and members of the Class are entitled to actual damages, injunctive relief, costs and attorney's fees for Defendants' acts and conduct.

60. Common questions of law and fact concerning NewAlliance's breach of the covenant of good faith and fair dealing are:

a. Whether NewAlliance breached its customer account agreement through its overdraft policies and practices of levying overdraft fees and overdraft collection fees as alleged herein;

b. Whether Plaintiff and the Class have performed all, or substantially all, of the obligations imposed on them under the customer agreement; and

c. Whether Plaintiff and members of the Class are entitled to actual damages, injunctive relief, costs and attorney's fees for NewAlliance's acts and conduct.

61. Common questions of law and fact concerning Defendants' conversion are:

a. Whether NewAlliance wrongfully collected overdraft fees from Plaintiff and the members of the Class, and whether NewAlliance took specific and readily identifiable funds from their accounts in payment of these fees in order to satisfy the improper overdraft fees;

b. Whether NewAlliance has, without proper authorization, assumed and exercised the right of ownership over these funds, in hostility to the rights of Plaintiff and the members of the Class, without legal justification;

c. Whether NewAlliance (now through First Niagara, as the successor-in-interest to

17

NewAlliance and as the parent of NewAlliance) continues to retain these funds unlawfully without the consent of Plaintiff or members of the Class;

d. Whether NewAlliance and First Niagara have permanently deprived Plaintiff and the members of the Class of these funds;

e. Whether these funds are properly owned by Plaintiff and the members of the Class, not NewAlliance and First Niagara, which now claim that they are entitled to their ownership, contrary to the rights of Plaintiff and the members of the Class;

f. Whether Plaintiff and the members of the Class are entitled to the immediate possession of these funds;

g. Whether NewAlliance and First Niagara have wrongfully converted these specific and readily identifiable funds;

h. Whether NewAlliance's wrongful conduct is continuing through First Niagara; and

i. Whether, as a direct and proximate result of this wrongful conversion, Plaintiff and the members of the Class have suffered and continue to suffer damages.

62. Common questions of law and fact concerning Defendants' unjust enrichment are:

a. Whether NewAlliance knowingly received and retained wrongful benefits and funds from Plaintiff and members of the Class;

b. Whether NewAlliance acted with conscious disregard for the rights of Plaintiff and members of the Class;

c. Whether NewAlliance (and now First Niagara) has been unjustly enriched at the

expense of, and to the detriment of, Plaintiff and members of the Class;

d. Whether NewAlliance's (and now First Niagara's) unjust enrichment is traceable to, and resulted directly and proximately from, the conduct alleged herein;

e. Whether it is inequitable for NewAlliance and First Niagara to be permitted to retain the benefits they have received, and are still receiving, without justification, from NewAlliance's imposition of overdraft fees on Plaintiff and members of the Class in an unfair, unconscionable, and oppressive manner;

f. Whether NewAlliance's (and now First Niagara's) retention of such funds obtained through improper overdraft fees is inequitable and constitutes unjust enrichment;

g. Whether the financial benefits derived by NewAlliance rightfully belong to Plaintiff and members of the Class;

h. Whether Plaintiff and members of the Class have no adequate remedy at law;

i. Whether NewAlliance and First Niagara should be compelled to disgorge in a common fund for the benefit of Plaintiff and members of the Class all wrongful or inequitable proceeds received or retained by it; and

j. Whether a constructive trust should be imposed upon all wrongful or inequitable sums received by NewAlliance and First Niagara traceable to Plaintiff and the members of the Class.

63. Resolution of any of the above questions of law or fact common to the Class will affect all of the Class members.

**E.  Adequacy of Representation**

64.     Plaintiff is a member of the Class as defined above.

65.     Through his attorneys, Plaintiff can and will fairly, adequately and vigorously prosecute the claims of the Class and represent and protect the interests of the members of the Class.

66.     Plaintiff (i) maintained an account at NewAlliance; (ii) initiated an electronic funds transfer with an ATM or debit card issued by NewAlliance; and (iii) was actually assessed one or more overdraft fees or charges for an ATM or one-time debit card transaction as a result of NewAlliance's practice of holding debit card transactions and resequencing the transactions from highest to lowest and not informing Plaintiff of the overdrafts beforehand as alleged herein.

67.     Plaintiff has suffered the same injury as the Class members, that injury being the unlawful imposition of fees or charges by NewAlliance alleged herein.

68.     Plaintiff has the same interest as the Class members, including recovering unlawfully collected fees or charges imposed by NewAlliance.

69.     Plaintiff has no interests antagonistic to or in conflict with the members of the Class.

70.     Plaintiff's counsel is able, competent and qualified to prosecute this class action litigation on behalf of Plaintiff and the Class.

**F.    Predominance and Superiority**

71.     Common questions of law or fact predominate over individual issues. Whether NewAlliance resequenced transactions to cause Plaintiff and members of the Class to incur overdraft charges is one of the predominate issues.

72.     Proceeding as a class action in this case is superior to other available means for

20

the fair and efficient adjudication of the claims of Plaintiff and the Class. Relative to the aggregate damages that may be awarded to the Class which may be substantial, the members of the Class suffered individually small damages. Therefore, the expense and burden of individual litigation makes it economically infeasible and procedurally impracticable for each member of the Class to individually seek redress for NewAlliance's wrongdoings.

73.     Furthermore, individualized litigation would present the potential for varying, inconsistent, or contradictory judgments, and would likely cause delay and additional expense to all parties and the court system resulting from multiple trials of the same factual issues. Proceeding as a class action presents fewer management difficulties, conserves the resources of the parties and the court system and would protect the rights of each member of the Class.

74.     Plaintiff is aware of no difficulty to be encountered in managing this action that would preclude its maintenance as a class action.

75.     Plaintiff alleges each of the following claims in the alternative.

### FIRST CLAIM FOR RELIEF
#### Conversion

76.     Plaintiff repeats the allegations above as if stated fully herein.

77.     NewAlliance had and continues to have a duty to maintain and preserve its customers' checking accounts and to prevent their diminishment through its own wrongful acts.

78.     NewAlliance has wrongfully collected overdraft fees from Plaintiff and the members of the Class, and has taken specific and readily identifiable funds from their accounts in payment of these fees.

79.     NewAlliance has, without legal authorization, assumed and exercised the right of ownership over these funds, in hostility to the rights of Plaintiff and the members of the Class.

80.     NewAlliance (and now First Niagara) continues to retain these funds unlawfully without the consent of Plaintiff or members of the Class.

81.     NewAlliance (and now First Niagara) intends to permanently deprive Plaintiff and the members of the Class of these funds.

82.     These funds are properly owned by Plaintiff and the members of the Class, not NewAlliance or First Niagara, which now claim that they are entitled to their ownership, contrary to the rights of Plaintiff and the members of the Class.

83.     Plaintiff and the members of the Class are entitled to the immediate possession of these funds.

84.     NewAlliance (and now First Niagara) has wrongfully converted these specific and readily identifiable funds.

85.     First Niagara is now the parent of, and successor-in-interest to, NewAlliance and, as a result, is liable to Plaintiff and the Class in the role.

86.     Defendants' wrongful conduct is continuing.

87.     As a direct and proximate result of this wrongful conversion, Plaintiff and the members of the Class have suffered and continue to suffer damages.

88.     By reason of the foregoing, Plaintiff and the members of the Class are entitled to recover from Defendants all damages and costs permitted by law, including actual, nominal, and general damages.

## SECOND CLAIM FOR RELIEF

### Money Had and Received

89.     Plaintiff repeats the allegations above as if stated fully herein.

90.     Plaintiff and the Class owned personal property in the form of money on deposit at NewAlliance.

91.     Through the foregoing unlawful conduct, NewAlliance has received money of which NewAlliance is not the true owner, and which, in equity and good conscience, NewAlliance should not be entitled to keep.

92.     Plaintiff and the Class members are the true owners of the money received by NewAlliance in connection with the unlawful conduct described above, including charging and collecting unlawful overdraft fees.

93.     By seizing Plaintiff's and Class members' respective funds, NewAlliance has received money that in fact belongs to Plaintiff and the Class and to which Defendants have no right.

94.     First Niagara is now the parent of, and successor-in-interest to, NewAlliance and, as a result, is liable to Plaintiff and the Class in that role for the allegations in this Claim.

## THIRD CLAIM FOR RELIEF

### Breach of the Covenant of Good Faith and Fair Dealing

95.     Plaintiff repeats the allegations above as if stated fully herein.

96.     Plaintiff and members of the Class had a contractual relationship with NewAlliance for deposit accounts and ATM/debit card services.

97.     Good faith is a legal element of every contract pertaining to the assessment of overdraft fees.

98.     New Alliance had a duty of good faith and fair dealing in its relationship with Plaintiff and the Class.

99.    Subterfuge and evasion violate the obligation of good faith in performance.  Bad

faith may be overt or may consist of inaction.  Examples of bad faith are evasion of the spirit of

the bargain, willful rendering of imperfect performance, abuse of a power to specify terms, and

interference with or failure to cooperate in the other party's performance.

100.    NewAlliance has breached its legally required covenant of good faith and fair

dealing through its overdraft policies and practices as alleged herein.

101.    In breach of its duties of good faith and fair dealing, NewAlliance has assessed

excessive, unreasonable and unnecessary overdraft charges against Plaintiff and the Class

members.

102.    NewAlliance's overdraft practices and charges were not determined in accordance

with the reasonable expectations of the parties.

103.    Moreover, any customer account agreement and any related documents constitute

contracts of adhesion as a standardized form contract drafted by NewAlliance – a party of vastly

superior bargaining strength – that are imposed on costumers rather than mutually agreed to,

leaving the customer only with the choice of accepting the terms or rejecting the agreements in

their entirety.

104.    Upon information and belief, the terms of the customer agreements and any

related documents did not adequately disclose that NewAlliance always prioritized electronic

transactions and also did not adequately disclose that NewAlliance always resequenced

transactions from high to low for the purpose of maximizing overdrafts and increasing overdraft

revenues for NewAlliance.

105.    As such, NewAlliance's overdraft policies and practices violated the reasonable

24

expectations of the Plaintiff and members of the Class.

106.    Plaintiff and the Class have performed all, or substantially all, of the obligations imposed on them under the customer agreements or any related documents.

107.    Plaintiff and members of the Class have sustained damages as a result of NewAlliance's breaches.

108.    Plaintiff seeks a judicial declaration determining that the charges imposed by NewAlliance were not consistent with NewAlliance's duties of good faith and fair dealing.

109.    Plaintiff also seeks compensatory damages resulting from NewAlliance's breach of its duties of good faith and fair dealing.

110.    First Niagara is now the parent of, and successor-in-interest to, NewAlliance and, as a result, is liable to Plaintiff and the Class in that role for the allegations in this Claim.

## FOURTH CLAIM FOR RELIEF

### Unconscionability

111.    Plaintiff repeats the allegations above as if stated fully herein.

112.    Any terms in a customer agreement that purport to authorize the bank to engage in the overdraft practices are unconscionable and unenforceable as a matter of law.

113.    Here, Plaintiff and those similarly situated are customers and consumers, not bankers. NewAlliance did not negotiate these terms with any customers.  Plaintiff, like most consumers, was not in a position to bargain for more favorable contract terms, nor was he able to experience the results of NewAlliance's practices before establishing a NewAlliance account.

114.    Plaintiff and those similarly situated were not made aware of Defendant's practices before they entered agreements with the bank.

115.    NewAlliance has structured totally one-sided transactions. The absence of equality of bargaining power, open negotiation, full disclosure, and a contract which fairly sets out the rights and duties of each party demonstrates that the transaction lacks those checks and balances which would inhibit the charging of unconscionable fees.

116.    Each overdraft charge derived from NewAlliance's improper practices should be rescinded and refunded to Plaintiff and those similarly situated.

117.    NewAlliance's conduct was unconscionable.

118.    First Niagara is now the parent of, and successor-in-interest to, NewAlliance and, as a result, is liable to Plaintiff and the Class in that role for the allegations in this Claim.

## FIFTH CLAIM FOR RELIEF

### Unjust Enrichment

119.    Plaintiff repeats the allegations above as if stated fully herein.

120.    Plaintiff, on behalf of himself and the Class, asserts a common law claim for unjust enrichment.

121.    By means of NewAlliance's wrongful conduct alleged herein, NewAlliance knowingly provided banking services to Plaintiff and members of the Class that were unfair, unconscionable, and oppressive.

122.    A party cannot induce, accept, or encourage another to furnish or render something of value to another party and avoid payment for the value received.

123.    As a result of the conduct described above, NewAlliance knowingly received wrongful benefits and funds from Plaintiff and members of the Class. In so doing, NewAlliance acted with conscious disregard for the rights of Plaintiff and members of the Class.

124.    As a result of NewAlliance's wrongful conduct as alleged herein, NewAlliance and now First Niagara have been unjustly enriched at the expense of, and to the detriment of, Plaintiff and members of the Class.

125.    Defendants' unjust enrichment is traceable to, and resulted directly and proximately from, the conduct alleged herein.

126.    Under the doctrine of unjust enrichment, it is inequitable for Defendants to be permitted to retain the benefits they received, and are still receiving, without justification, from NewAlliance's imposition of overdraft fees on Plaintiff and members of the Class in an unfair, unconscionable, and oppressive manner.  Defendants' retention of such funds under circumstances making it inequitable to do so constitutes unjust enrichment.

127.    The financial benefits derived by Defendants rightfully belong to Plaintiff and members of the Class.  Defendants should be compelled to disgorge in a common fund for the benefit of Plaintiff and members of the Class all wrongful or inequitable proceeds received by them.  A constructive trust should be imposed upon all wrongful or inequitable sums received by Defendants traceable to Plaintiff and the members of the Class.

128.    First Niagara is now the parent of, and successor-in-interest to, NewAlliance and, as a result, is liable to Plaintiff and the Class in that role for the allegations in this Claim.

129.    Plaintiff and members of the Class have no adequate remedy at law.

## VI.    PRAYER FOR RELIEF

WHEREFORE, Plaintiff on behalf of himself and the members of the Class, prays for:

a.      An Order certifying the Class and appointing Plaintiff as the representative of the Class, and appointing counsel for Plaintiff as Class Counsel;

b.   An Order that Defendants disgorge in a common fund for the benefit of Plaintiff and members of the Class all wrongful or inequitable proceeds received by them;

c.   Trial by jury;

d.   Actual damages and restitution in the form of all overdraft fees paid to NewAlliance by Plaintiff and the Class (and retained by NewAlliance and First Niagara), as a result of the wrongs alleged herein in an amount to be determined at trial;

e.   Pre-judgment interest at the maximum rate permitted by applicable law;

f.   Post-judgment interest at the maximum rate permitted by applicable law; and

g.   Such other and further relief to which Plaintiff and the Class may be entitled.

Dated: July 9, 2012

Respectfully submitted,

SQUITIERI & FEARON, LLP

By: _____
Stephen J. Fearon, Jr.
32 East 57th Street
12th Floor
New York, New York 10022
Telephone: (212) 421-6492
Facsimile: (212) 421-6553
Email: Stephen@sfclasslaw.com

GREG COLEMAN LAW PC
Greg Coleman
550 West Main Ave, Suite 600
Knoxville, TN 37902
Telephone: (865) 247-0080
Facsimile: (865) 522-0049
Email: greg@gregcolemanlaw.com

WEXLER WALLACE LLP
Edward A. Wallace
Amy E. Keller
Dawn M. Goulet
55 W. Monroe Street, Suite 3300
Chicago, IL 60603
Telephone: (312) 346-2222
    Facsimile: (312) 346-0022
Email: eaw@wexlerwallace.com
    aek@wexlerwallace.com
    dmg@wexlerwallace.com

HANSEN RIEDERER DICKINSON
CRUEGER & REYNOLDS LLC
Charles Crueger
Erin Dickinson
316 N. Milwaukee Street, Suite 200
Milwaukee, WI 53202
Telephone: (414) 273-8475
Facsimile: (414) 273-8476
Email: charles@hrdc-law.com
    erin@hrdc-law.com

*Attorneys for Plaintiff*