UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

PATRICK TANASI, on behalf of himself and
others similarly situated,

Plaintiff,

v.

**DECISION AND ORDER**
12-CV-646S

NEW ALLIANCE BANK and FIRST
NIAGARA FINANCIAL GROUP, INC.,

Defendants.

## I.  INTRODUCTION

Seeking to represent a class of similarity situated individuals, Plaintiff Patrick Tanasi

brings this diversity action against Defendants New Alliance Bank, and its successor-in-

interest, First Niagara Financial Group, Inc. (collectively "the Bank").

All of Tanasi's five claims – those for conversion, money had and received, breach

of covenant of good faith and fair dealing, unconscionability, and unjust enrichment – stem

from the Bank's alleged practice of re-ordering debit (or "point-of-sale") transactions from

the highest transaction amount to the lowest amount. Tanasi, who has not yet moved for

class certification, alleges that instead of processing the debit transactions in chronological

order as they occurred, the Bank delayed processing the transactions and re-ordered them

in this high-to-low fashion in an attempt to maximize overdraft fees.

The Bank moves to dismiss the case on essentially two grounds. It first argues that

its offer of judgment, made under Federal Rule of Civil Procedure 68 in July of 2012,

satisfied all of Tanasi's alleged damages and thus moots the entire case. Alternatively, it

argues that even if the offer of judgment did not moot the case, Tanasi has failed to state a cognizable claim.

The Bank also contends that if this case were to proceed, account holders who are now subject to its class-action-waiver provision, which was instituted sometime after the merger, should be excluded from the putative class.

For the following reasons, the Bank's motion on mootness grounds is denied, its motion on the merits is granted in part and denied in part, and its motion with respect to the waiver is deferred.

## II. BACKGROUND

### A.    Facts[1]

Patrick Tanasi is a Connecticut resident who maintained a personal checking account with New Alliance Bank until it merged with First Niagara. (Compl., ¶ 11.)[2] Before the merger, New Alliance was a Delaware corporation with its principal place of business in Connecticut. It provided retail banking services to "tens of thousands of consumers" throughout Connecticut and Massachusetts. (Id., ¶ 12.) As part of its operations, it issued debit cards to its customers – including Tanasi. (Id.)

Customers like Tanasi could use these debit cards, also called check or ATM cards, to withdraw money from ATMs or make purchases.  When customers overdrew their

---

[1]Facts alleged in the complaint – but not labels or legal conclusions – must be accepted as true for the purposes of resolving this motion. See Ashcroft v. Iqbal, 556 U.S. 662, 668, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009); ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007).

[2]According to the complaint, on April 15, 2011, New Alliance became a wholly-owned subsidiary of First Niagara, a Delaware corporation with its principal offices Buffalo, N.Y.  (Compl., ¶ 15.) First Niagara is sued only in its capacity as successor-in-interest to New Alliance. There are no independent allegations against it.

accounts using their cards, New Alliance would charge them a $33.00 overdraft fee. (Id.,

¶ 7.) Tanasi alleges that, regardless of the type of transaction for which the card was used,

the Bank was "notified instantaneously" when it was used and had the option to accept or

decline the transaction immediately. (Id., ¶ 19.) But instead of acting on the transaction

immediately, the Bank would delay, employing sophisticated software to order transactions

from the highest amount to the lowest amount. (Id., ¶ 20.) This procedure increased the

potential frequency of overdrafts, and by extension, increased the amount of overdraft fees

the Bank could charge.

Tanasi provides the following example: If a customer whose account had a $50

balance made five transactions – four $10 transactions and a subsequent $100 transaction

– the Bank would re-order the debits from largest to smallest, posting the larger $100

transaction first. This re-ordering would result in a total of five overdraft transactions, as

opposed to just one if the transactions were processed in chronological order. (Id., ¶ 21.)

## B.    Procedural History

Tanasi commenced this action by filing a complaint in this Court on July 9, 2012.

The Bank then filed the current motion to dismiss on August 9, 2012. At the Bank's

request, this Court then permitted additional briefing in light of the Supreme Court's

decision in  Genesis Healthcare Corp. v. Symczyk, 133 S. Ct. 1523, 185 L. Ed. 2d 636

(2013). That briefing concluded on May 13, 2013, at which time this Court took the motion

under consideration.

## III.  DISCUSSION

### A.     Motion to Dismiss Standard – Rule 12(b)(6)

Rule 12(b)(6) allows dismissal of a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).  Federal pleading standards are generally not stringent: Rule 8 requires only a short and plain statement of a claim. Fed. R. Civ. P. 8(a)(2).  But the plain statement must "possess enough heft to show that the pleader is entitled to relief." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955, 1966, 167 L. Ed. 2d 929 (2007).

When determining whether a complaint states a claim, the court must construe it liberally, accept all factual allegations as true, and draw all reasonable inferences in the plaintiff's favor. ATSI Commc'ns, 493 F.3d at 98. Legal conclusions, however, are not afforded the same presumption of truthfulness. See Iqbal, 556 U.S. at 678 ("The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.").

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 570). Labels, conclusions, or a "formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555. Facial plausibility exists when the facts alleged allow for a reasonable inference that the defendant is liable for the misconduct charged. Iqbal, 556 U.S. at 678. The plausibility standard is not, however, a probability requirement: the pleading must show, not merely allege, that the pleader is entitled to relief. Id. at 678; Fed. R. Civ. P. 8(a)(2). Well-pleaded allegations must

nudge the claim "across the line from conceivable to plausible." Twombly, 550 U.S. at 570.

**B.     Rule 68 Offer of Judgment & Mootness**

Rule 68 permits "a party defending against a claim" to "serve on an opposing party an offer to allow judgment on specified terms." Fed. R. Civ. P. 68(a). There is no dispute that in July of 2012, nine days after this action was filed, the bank made such an offer to Tanasi, who did not accept it. (See Offer of Judgment, attached as Ex. B.; Docket No. 11-3.) The Bank argues that this offer, which was for $10,000 plus attorney fees and costs, and which was undisputedly sufficient to satisfy Tanasi's full claim, renders the case moot under Article III of the United States Constitution.

"The doctrine of mootness, which is embedded in Article III's case or controversy requirement, requires that an actual, ongoing controversy exist at all stages of federal court proceedings." Pitts v. Terrible Herbst, Inc., 653 F.3d 1081, 1086 (9th Cir. 2011) (citing Burke v. Barnes, 479 U.S. 361, 363, 107 S.Ct. 734, 93 L .Ed.2d 732 (1987)). In this Circuit it is settled that, if Tanasi were not seeking to represent a class, the Bank's complete offer of judgment would moot his claim and strip this Court of subject-matter jurisdiction over it. See Doyle v. Midland Credit Mgmt., Inc., --- F.3d ----, No. 12-4555, 2013 WL 3242148 (2d Cir. June 28, 2013) (affirming prior holdings finding that an individual claim is rendered moot even if the complete offer of judgment is unaccepted, and clarifying that an offer need not even be in writing); see also ABN Amro Verzekeringen BV v. Geologistics Ams., Inc., 485 F.3d 85, 92–93 (2d Cir. 2007) (affirming Rule 12(b)(1) dismissal based on a tender of the maximum amount owed).  But see Genesis Healthcare Corp. v. Symczyk, 133 S. Ct. 1523, 1533, 185 L. Ed. 2d 636 (2013) (Kagen, J., dissenting) ("That thrice-asserted view [that an offer of judgment moots a case] is wrong, wrong, and wrong again."). The inverse

also appears to be settled: if the class were already certified, an offer to satisfy only the named plaintiff's claims would not moot the entire case because the class "acquire[s] a legal status separate from the interest asserted by [the named plaintiff]." <u>Sosna v. Iowa</u>, 419 U.S. 393, 399, 95 S. Ct. 553, 42 L. Ed.2d 532 (1975).

The Second Circuit has not, however, ruled whether such an offer moots a class-action complaint when the offer is made *before* class certification. Nor has the Supreme Court.

The Bank purports to find support for its proposition in the Supreme Court's recent majority decision in <u>Genesis</u>, but that case came before the Supreme Court as a putative collective action under the Fair Labor Standards Act ("FLSA"), not a putative Rule 23 class action, as is this case. This is a distinction with a difference, as the <u>Genesis</u> Court itself made clear: "Rule 23 actions are fundamentally different from collective actions under the FLSA." <u>Id.</u> at 1529. Although some of the Court's logic is arguably applicable to Rule 23 actions, and it is conceivable that the Court may eventually rule in like manner with respect to class actions, it has not done so yet. Instead, it carefully excluded class actions from its holding. Accordingly, like other courts, this Court finds it cannot look to <u>Genesis</u> for controlling guidance on this issue. <u>See, e.g.</u>, <u>Schlaud v. Snyder</u>, 717 F.3d 451, 456 (6th Cir. 2013) (distinguishing <u>Genesis</u> "because it does not involve class certification under Rule 23"); <u>Craftwood II, Inc. v. v. Tomy Int'l, Inc.</u>, No. SA CV 12-1710 DOC, 2013 WL 3756485, at *3 (C.D. Cal. July 15, 2013) ("<u>Genesis</u> is distinguishable because it considered a claim filed as a collection action under Section 16(b) . . . of the FLSA . . . . A ruling in the context of a collective action does not directly apply to a class action"); <u>Singer v. Illinois State Petroleum Corp.</u>, No. C 9109, 2013 WL 2384314, at *1 (N.D. Ill. May 24, 2013)

("[T]he Genesis majority opinion took pains to distinguish the long-standing Supreme Court doctrine that had rejected mootness arguments" in Rule 23 contexts).

Although neither the Supreme Court nor the Second Circuit has addressed this issue, other Circuits have, and the Bank finds support for its position in Damasco v. Clearwire Corp., where the Seventh Circuit held that "[o]nce the defendant offers to satisfy the plaintiff's entire demand, there is no dispute over which to litigate, and a plaintiff who refuses to acknowledge this loses outright . . . because he has no remaining stake." 662 F.3d 891, 895 (7th Cir. 2011). The court continued, "To allow a case, not certified as a class action and with no motion for class certification even pending, to continue in federal court when the sole plaintiff no longer maintains a personal stake defies the limits on federal jurisdiction expressed in Article III." Id. at 896.

But the Seventh is the only Circuit to have ruled in this manner, and the Third, Fifth, Ninth, and Tenth Circuits have all disagreed with this approach.[3] See Pitts v. Terrible Herbst, Inc., 653 F.3d 1081, 1091–92 (9th Cir. 2011); Lucero v. Bureau of Collection Recovery, Inc., 639 F.3d 1239, 1249–50 (10th Cir. 2011); Sandoz v. Cingular Wireless LLC, 553 F.3d 913, 920–21 (5th Cir. 2008); Weiss v. Regal Collections, 385 F.3d 337, 348 (3d Cir. 2004).

Each of these courts took a slightly different, though largely similar, approach in arriving at their shared conclusion. The Ninth Circuit, for its part, relied primarily on Supreme Court precedent, see County of Riverside v. McLaughlin, 500 U.S. 44, 111 S. Ct.

---

[3]It should also be noted that the practice in the Seventh Circuit, as proposed by the Damasco court itself, is simply for litigants to move for certification simultaneously with filing the complaint. Effectively then, there are *zero* circuits where a Rule 68 offer of judgment actually serves to moot a class-action complaint.

1661, 114 L. Ed. 2d 49 (1991), that "transitory" claims can relate back to the time of the filing of the complaint and are not rendered moot by an offer of judgment. Pitts, 653 F.3d at 1090–91. The court explained that it saw "no reason to restrict application of the relation-back doctrine only to cases involving inherently transitory claims." Id. at 1091. It continued, "Where, as here, a defendant seeks to 'buy off' the small individual claims of the named plaintiffs, the analogous claims of the class—though not inherently transitory—become no less transitory than inherently transitory claims." Id.

The Tenth Circuit found that a "nascent interest attaches to the proposed class upon the filing of a class complaint such that a rejected offer of judgment for statutory damages and costs made to a named plaintiff does not render the case moot under Article III." Lucero, 639 F.3d at 1249. It found that a contrary rule would waste judicial resources, and that "the timing of the class certification 'is not crucial.'" Id. (citing U.S. Parole Comm'n v. Geraghty, 445 U.S. 388, 398, 100 S. Ct. 1202, 63 L. Ed. 2d 479 (1980)).

The Fifth Circuit, finding support in Sosna, 419 U.S. at 403 n. 11, also held that a class certification motion made after an offer of judgment would "relate back" to the time of the filing of the complaint. Therefore, if the class were eventually certified, an offer of judgment made only to the named plaintiff could not moot the entire class. Sandoz, 553 F.3d at 920–21.

The Third Circuit was the first to address this question and was the first to offer many of these rationales. It found class-action claims to be transitory and thus insulated from mootness when the defense attempts to pick off plaintiffs; it found the relation-back principle articulated in Sosna to be applicable; and it also raised policy concerns, finding that judicial resources would be wasted and the purpose of Rule 23 would be thwarted if

named plaintiffs could be picked off early in the litigation. Weiss, 385 F.3d at 347–49.

The Seventh Circuit's approach has, however, persuaded some district courts in this Circuit, creating a split. Compare Ambalu v. Rosenblatt, 194 F.R.D. 451, 453 (E.D.N.Y. 2000) ("If a named representative's claim becomes moot before class certification, the entire case is to be dismissed for lack of subject matter jurisdiction"); Greif v. Wilson, Elser, Moskowitz, Edelman & Dicker LLP, 258 F. Supp. 2d 157, 160–61 (E.D.N.Y. 2003) (applying reasoning of Ambalu); Tratt v. Retreival Masters Creditors Bureau, Inc., No. 00 CV 4560, 2001 WL 667602, at *2 (E.D.N.Y. May 23, 2001) (Ambalu is "entirely dispositive"); Wilner v. OSI Collection Servs., Inc., 198 F.R.D. 393, 394–96 (S.D.N.Y. 2001) (agreeing with reasoning in Ambalu); Edge v. C. Tech Collections, Inc., 203 F.R.D. 85, 87–88 (E.D.N.Y. 2001) (agreeing with reasoning in Ambalu but finding "a case or controversy still remain[ed]" because Rule 68 offer of judgment did not offer the maximum amount recoverable under the FDCPA) with Thomas v. Am. Serv. Fin. Corp., No. 12-CV-4235 ADS AKT, 2013 WL 1898954, at *9 (E.D.N.Y. May 7, 2013) (offer of complete relief to named plaintiff does not moot the class); Herzlinger v. Nichter, No. 09 Civ. 00192(JSG)(PED), 2011 WL 4585251, at *8 (S.D.N.Y. Sept. 8, 2011), *adopted by* No. 7:09–CV–00192, 2011 WL 4575126, at *1 (S.D.N.Y. Oct. 3, 2011) (same); McDowall v. Cogan, 216 F.R.D. 46, 47–52 (E.D.N.Y. 2003) (same); Eckert v. Equitable Life Assurance Soc. of the U.S., 227 F.R.D. 60, 63–64 (E.D.N.Y. 2005) (same); Nasca v. GC Servs. Ltd. P'ship, No. 01CIV10127(DLC), 2002 WL 31040647, at *3 (S.D.N.Y. Sept. 12, 2002) (same); Schaake v. Risk Mgmt. Alternatives, Inc., 203 F.R.D. 108, 110–12 (S.D.N.Y. 2001) (same); White v. OSI Collection Servs., Inc., No. 01-CV-1343(ARR), 2001 WL 1590518, at *4 (E.D.N.Y. Nov. 5, 2001) (same).

Despite this disagreement, this Court finds the reasoning first articulated by the Third Circuit in Weiss, and echoed by three other Circuits and the majority of district courts in this Circuit, to be the most persuasive. In fact, the reasoning expressed by Judge McMahon of the Southern District of New York in Schaake, where the court ruled on a motion to dismiss under a similar procedural posture as this case, is especially relevant here. The Schaake court took guidance from the Third Circuit and offered essentially three now-familiar reasons for allowing a putative class action to proceed when a full offer of judgment has been made to the representative plaintiff.

First, it pointed to the Supreme Court's statement in Roper that

> [r]equiring multiple plaintiffs to bring separate actions, which effectively could be "picked off" by a defendant's tender of judgment before an affirmative ruling on class certification could be obtained, obviously would frustrate the objectives of class actions; moreover it would invite waste of judicial resources by stimulating successive suits brought by others claiming aggrievement.

Deposit Guar. Nat'l Bank v. Roper, 445 U.S. 326, 339, 100 S. Ct. 1166, 63 L. Ed. 2d 427 (1980).        Such a policy would  "allow defendants to essentially opt-out of Rule 23, by allowing a defendant to avoid liability for class wide relief, which could be prevented by the mere service of a Rule 68 offer at the outset of the case." Schaake, 203 F.R.D. at 112.

Second, the court noted that "hinging the outcome" of a  motion to dismiss on the timing of a class certification motion "is not well-supported in the law nor sound judicial practice; it would encourage a 'race to pay off' named plaintiffs very early in the litigation, before they file motions for class certification." Id. (citing Liles v. Am. Corrective Counseling Servs., Inc., 201 F.R.D. 452, 455 (S.D. Iowa 2001)).

And third, the Schaake court distinguished cases like Ambalu, where the plaintiff

failed to make a class certification motion over a significant period of time. By contrast, the offer of judgment in Schaake was made only 32 days after the complaint was filed. The offer here was made even sooner: the Bank made its offer only nine days after Tanasi filed the complaint – "well before plaintiff could be reasonably expected to file [his] class certification motion." Id. at 112.

****

This is not to say that there are not compelling reasons to find differently. As courts like Ambalu point out, the "plain purpose of Rule 68 is to encourage settlement and avoid litigation." 194 F.R.D. at 453 (quoting Marek v. Chesny, 473 U.S. 1, 5, 105 S. Ct. 3012, 87 L. Ed. 2d 1 (1985)). That purpose is arguably frustrated when a defendant must make a Rule 68 offer to a putative, amorphous class to avoid all litigation. A rule to the contrary also has perhaps the most straightforward argument in its favor – that which was adopted by the Seventh Circuit: a class must be certified before it attains any legal status, and, therefore, if an individual's claim becomes moot before certification, there is nothing left for the court to adjudicate. Moreover, in Genesis, the Supreme Court could be seen to have backed away from its concern about "picking off" plaintiffs, calling this language "dicta" and noting that the Roper holding "turned on a specific factual finding that the plaintiffs' possessed a continuing personal economic stake in the litigation, even after the defendants' offer of judgment." Genesis, 133 S. Ct. at 1532. (Nonetheless, the Genesis Court was also careful to note that this dictum "was tethered to the unique significance of certification decisions in class-action proceedings," as opposed to collective actions. Id.)

But ultimately, without clear precedent, this Court finds the rationale outlined by the overwhelming majority of the circuit courts to be persuasive, and accordingly, it finds that

the Bank's offer of judgment to Tanasi did not moot his pre-certification class-action complaint.

## C.   Tanasi's Claims on the Merits[4]

Having determined that this action is not moot, this Court must turn to the Bank's arguments for dismissal on the merits.

### 1.   Breach of Covenant of Good Faith and Fair Dealing

In Connecticut, like most states, "every contract carries an implied covenant of good faith and fair dealing requiring that neither party do anything that will injure the right of the other to receive the benefits of the agreement." Gaudio v. Griffin Health Servs. Corp., 249 Conn. 523, 564, 733 A.2d 197 (1999). "To constitute a breach of that covenant, the acts by which a defendant allegedly impedes the plaintiff's right to receive benefits that he or she reasonably expected to receive under the contract must have been taken in bad faith." Alexandru v. Strong, 81 Conn. App. 68, 81, 837 A.2d 875, 883 (2004). Bad faith, in turn, generally "implies both actual or constructive fraud, or a design to mislead or deceive another, or a neglect or refusal to fulfill some duty or some contractual obligation, not prompted by an honest mistake as to one's rights or duties, but by some interested or sinister motive." Id. It "means more than mere negligence; it involves a dishonest purpose." Id.

Tanasi contends that the Bank's re-ordering system breached this duty. But "[a] claim for breach of the implied covenant of good faith and fair dealing must be based on

_____

[4]The Agreement does have a choice-of-law provision, but that provision is limited to a section of the Agreement that is not relevant here. Thus, because the place of contracting, performance, and the domicile of the plaintiff is Connecticut, see Forest Park Pictures v. Universal Television Network, Inc., 683 F.3d 424, 433 (2d Cir. 2012), this Court will apply Connecticut law.

the terms of the contract and cannot be applied to achieve a result contrary to [its] express terms." Beckenstein Enterprises-Prestige Park, LLC v. Keller, 115 Conn. App. 680, 693-94, 974 A.2d 764, 773 (2009). The Bank, therefore, relies exclusively on the Account Agreement between it and Tanasi, arguing that this Agreement expressly permits the Bank to re-order a customer's transactions.[5]

Section Five, entitled "Payment of Items" of the Agreement provides that:

> We [the Bank] may pay checks or other items charged against your [Tanasi's] account, including those payable to us, in any order we determine (for example, we may pay checks from largest to smallest, but may pay them before or after electronic debits to your account.) We may pay items in any order, even if paying a particular item results in an insufficient balance in your account to pay other items that could have been paid.

(Account Agreement, at 10 (parenthesis in original); attached as Ex. "A" to motion to dismiss; Docket No. 11-2.)

Immediately thereafter, Section Six, entitled "Insufficient Funds and Returned Items" provides:

> If there is not enough money in your account or if there is not enough money available in your account when a check, pre-authorized withdrawal, point-of-sale transaction, Visa Check Card Transaction, ATM withdrawal or any debit or withdrawal request is presented for payment, we may, at our option, do one of two things: (a) We may pay the item or allow the transaction, and your account will be overdrawn or (b) The item may be returned or the transaction refused without paying it. It is solely in our discretion whether to pay or return the item. In either case, your account will be assessed an overdraft fee.

---

[5]Tanasi did not append this document to his complaint. And, although the court generally may only consider facts stated in the complaint or "[d]ocuments that are attached to the complaint or incorporated in it by reference," a document not appended to the complaint may be considered if the document is "incorporated [in the complaint] by reference" or is a document "upon which the complaint solely relies and which is integral to the complaint." Roth v. Jennings, 489 F.3d 499, 509 (2d Cir. 2007) (modification omitted). The Agreement, which the Bank submitted for this Court's consideration, is such a document.

(Id.)

Accordingly, the Bank clearly had authority to re-order "checks and other items." But Tanasi argues that "items" are not "debit transactions," and, therefore, the Bank does not have authority under the Agreement to re-order this type of transaction.

Undertaking a plain reading of the Agreement, this Court must agree with Tanasi, as the Agreement itself differentiates between "items," on the one hand, and "debit transactions," on the other.[6]

The example provided in Section Five of the Agreement first demonstrates that the parties considered checks and other items to be similar, but transactions to be different. This example allows the Bank to pay checks from largest to smallest, but "before or after electronic debits." The Agreement therefore suggests that electronic debits are static, and that only checks and "items" can be moved fluidly around them. This is intuitively sensible, since debit transactions occur at a specified time – when the card is used – but checks can be effectively be "paid" at any time.

Section Six makes this distinction more explicit. This section allows the Bank to "pay the item" *or* "allow the transaction." It further provides that the "item may be returned" *or* "the transaction refused without paying it." If the term "item" was meant to refer to debit transactions, as the Bank argues, then there would be no need to make a distinction between "paying items" and "allowing transactions." Instead, it is clear that an item refers to a check or other negotiable instrument – tangible items in the truest sense of that word; things that can be "returned." Instantaneous debit transactions, which occur with a swipe

---

[6]Even Connecticut law appears to make this distinction. See Conn Gen. Stat. § 42a-4-104(A)(9) ("'[I]tem means an instrument or a promise or order to pay money handled by a bank for collection or payment [and] does not include a . . . debit card slip.").

of a card, cannot therefore be considered "items" under the plain terms of the Agreement.

And that makes all the difference, because the Bank reserved the right to pay only "checks or other items" – not transactions – "in any order [it] determine[s]." With respect to debit transactions, the Bank had only two options: allow them or refuse them. But Tanasi alleges that the Bank took neither of these actions, and instead delayed processing debit transactions and re-ordered them in an effort to increase profits. Because the Agreement did not authorize this tactic, the Bank's motion to dismiss Tanasi's breach-of-good-faith-and-fair-dealing claim is denied.

### 2. Unjust Enrichment & Money Had and Received

The Bank's sole argument against Tanasi's unjust-enrichment and money-had-and-received claims is predicated on the same argument raised immediately above, namely that Tanasi cannot state such a claim because the Agreement authorized the Bank's actions.[7] Because this Court has already found that the Agreement did not authorize debit-transaction re-ordering, the Bank's motion on these claims is also denied.

### 3. Unconscionability

Tanasi seeks to assert a claim for unconscionability. But this is generally a contract defense, not an independent cause of action. See, e.g., Hottle v. BDO Seidman LLP, 268

---

[7]The Bank initially argued that Connecticut does not recognize a claim for money had and received. But Tanasi pointed to controlling authority that such a claim is indeed recognized, and the Bank abandoned that argument in its reply brief.

The Bank also makes passing reference to the principle of law that generally "an express contract between the parties precludes recognition" of an unjust-enrichment claim. Town of New Hartford v. Conn. Res. Recovery Auth., 291 Conn. 433, 454, 970 A.2d 592, 611 (2009). But "the existence of a contract, in itself, does not preclude equitable relief which is not inconsistent with the contract." Rent–A–PC, Inc. v. Rental Management, Inc., 96 Conn. App. 600, 606, 901 A.2d 720 (2006). Accordingly, without further argument, this Court will not dismiss the unjust-enrichment claim simply because a contract existed between the parties. See Id. at 604–05 ("Unjust enrichment applies wherever justice requires compensation to be given for property or services rendered under a contract, and no remedy is available by an action on the contract.").

Conn. 694, 704, 846 A.2d 862, 870 (2004) (contract defenses include fraud, duress, and unconscionability); 8 Williston on Contracts § 18:1 (4th ed. 2013) ("Unconscionable agreements may be said to be voidable or unenforceable by the party imposed upon."). Tanasi has not provided any authority indicating that "unconscionability" is a stand-alone cause of action. Accordingly, this claim is dismissed.

### 4.      Conversion

Tanasi voluntarily withdrew his conversion claim.

### D.      Exclusion of Potential Class Members

Finally, the Bank argues that potential class members, who, unlike Tanasi, continued banking with it after the merger, ought to be excluded from the putative class because those customers signed a class-action waiver. But this case is in the earliest stages of litigation. To date, the Bank has not answered the complaint, no discovery has occurred, and there has been no attempt to certify the class. This Court will therefore defer ruling on this contention until this litigation has progressed further.

## IV. CONCLUSION

In accordance with the clear weight of authority as the law now stands, this Court finds that the Bank's offer of full relief to Tanasi did not moot his class-action complaint. Further, because the Agreement did not authorize the Bank to re-order debit transactions, its motion to dismiss Tanasi's claims for breach of covenant of good faith and fair dealing, money had and received, and unjust enrichment is denied. But because unconscionability is a contract defense, and because Tanasi withdrew his conversion claim, those claims are dismissed.

**V.  ORDERS**

IT HEREBY IS ORDERED, that Defendants' Motion to Dismiss [11] is GRANTED

in part and DENIED in part.

SO ORDERED.

Dated:        August 26, 2013
              Buffalo, New York

/s/William M. Skretny
WILLIAM M. SKRETNY
Chief Judge
United States District Court
